45 F.3d 713
 63 USLW 2542
 UNITED STATES of America, Appellant,
v.
Nicola DeRIGGI; Anthony Barone; Andrew Komonski; Benny
Chao; Jai Gurdyal; Joseph Antonucci; Juan Ayala;
Salvatore Cariola; Peter DiPrima; Brian Ficeto; William
Kruczowy; Lawrence Lazewski; Richard Litwinkowich; Edwin
Mercado; St. Elmo Moaze; Henry Muller; Gilbert O'Connor;
Joseph Ridley; George Rodriguez; Ralph Sands; John
Sarcone; Rafael Sargeant and Anthony Tetro, Defendants,
Alfred Abbadessa; Michael Antonucci; Ismael Hernandez and
Raymond Quinones, Defendants-Appellees.
 No. 541, Docket 94-1219.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 23, 1994.
Decided Jan. 26, 1995.
 
 Gordon Mehler, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY (Zachary Carter, U.S. Atty. E.D.N.Y., David C. James, Asst. U.S. Atty., of counsel) for plaintiff-appellant.
 John Burke, Brooklyn, NY, for defendant-appellee Raymond Quinones.
 Daniel Nobel, New York City, for defendant-appellee Ismael Hernandez.
 Joseph Corrozzo, Rubinstein and Corrozzo, Kew Gardens, NY, for defendant-appellee Michael Antonucci.
 Ronald Rubinstein, Kew Gardens, NY, for defendant-appellee Alfred Abbadessa.
 Before PRATT, ALTIMARI, and JACOBS, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 The United States appeals, pursuant to 18 U.S.C. Sec. 3742(b), from judgments entered on March 29, April 22, and May 2, 1994, sentencing the defendants-appellees to terms of imprisonment that are below the minimum terms prescribed by the applicable provisions of the United States Sentencing Guidelines, and that are not the subject of findings justifying downward departures, 848 F.Supp. 369. The United States also appeals from the denial of motions made pursuant to Fed.R.Crim.P. 35(c) to correct the disputed sentences.
 
 
 2
 The defendants-appellees pleaded guilty to conspiracy to commit extortion by accepting illegal payoffs in violation of the Hobbs Act, 18 U.S.C. Sec. 1951. Alfred Abbadessa and Michael Antonucci were sentenced principally to twelve months' imprisonment. Raymond Quinones and Ismael Hernandez were, respectively, principally sentenced to eleven and nine month terms. The government appeals the sentences on the ground that longer prison terms were required by the Sentencing Guidelines. For the reasons set forth below, we vacate and remand for resentencing.
 
 BACKGROUND
 
 3
 Abbadessa, Antonucci, Hernandez and Quinones ("appellees") were New York City Taxi and Limousine Commission ("TLC") inspectors. Appellees, whose jobs were to inspect New York City medallion cabs, accepted bribes along with 26 of their colleagues, to overlook defects in the cabs they inspected and to certify inspections that never took place. Some inspectors also caused cabs to fail inspections because their owners had refused to make payoffs.
 
 
 4
 The widespread scheme was centered at the TLC's Safety and Emissions Division in Woodside, Queens. All taxicabs must undergo routine inspections three times annually at the Woodside facility. In addition, random inspections are conducted in the field. Cab conditions that are not in compliance with TLC standards trigger the issuance of a "notice of violation." Failure of a routine inspection, or failure to cure a notice of violation can result in the suspension of the taxi's medallion. By rigging the inspection system, the appellees ensured that taxicabs whose owners or operators paid bribes would pass inspection. The scheme also encompassed the field tests, guaranteeing that cabs with notices of violation received notices stating that the defects had been corrected.
 
 
 5
 The appellees were line inspectors, responsible for actually conducting inspections. The environment in which they worked was rife with corruption. According to the district court, half of the forty-four line inspectors were defendants in the district court. Three of seven senior inspectors were charged, and all three supervising inspectors were also defendants. Several defendants testified that employees who resisted the scheme were threatened and intimidated. One inspector reported the corruption to his supervisor only to discover that the boss was a participant.
 
 
 6
 All told, thirty defendants pleaded guilty to conspiracy to commit extortion by accepting illegal payoffs in violation of 18 U.S.C. Sec. 1951(a). The presentence reports ("PSRs"), using the then-governing Guidelines, recommended a range of 24 to 30 months for the appellees, calculated as follows: (1) a base offense level of 10, see U.S.S.G. Secs. 2E1.5 and 2C1.1(a); (2) a two-level increase because there were multiple bribes, see U.S.S.G. Sec. 2C1.1(b)(1); (3) another eight-level increase to reflect the aggregate value of the bribes, see U.S.S.G. Secs. 2C1.1(b)(2)(A), 2F1.1(b)(1)(I); (4) a three-level decrease for acceptance of responsibility, see U.S.S.G. Secs. 3E1.1(a), (b)(1); and (5) a criminal history category of I. The total offense level of seventeen resulted in a Guideline range of 24 to 30 months for all four appellees. Although the government had not moved for downward departures, the district court imposed sentences of less than twenty-four months on each appellee.
 
 
 7
 In a memorandum which was revised and reissued one month after the defendants were sentenced, the district court analyzed the relevant sentencing issues. In the court's view, the Guidelines are one of several factors to be considered in imposing sentence, and are not necessarily controlling. Relying on an analysis it set forth in United States v. Concepcion, 795 F.Supp. 1262 (E.D.N.Y.1992), the court determined that, in the case before it, the Sentencing Guidelines did not govern because the 24 to 30 month range was "greater than necessary" to achieve general punishment purposes as that phrase is used in 18 U.S.C. Sec. 3553(a). The court therefore imposed lesser sentences, noting without findings or particulars that the "sentences imposed would be appropriate" even if the Guidelines were, in fact, binding.
 
 
 8
 The government appeals. It challenges the court's interpretation of 18 U.S.C. Sec. 3553 and asks that we reject the notion that the Guidelines do not control in every instance. The government further asks that we vacate the sentences because the district court made inadequate findings to support individual downward departures.
 
 DISCUSSION
 
 9
 A. The Binding Nature of the Sentencing Guidelines
 
 
 10
 Congress transformed the way in which federal sentences were imposed when it passed the Sentencing Reform Act in 1984. See Burns v. United States 501 U.S. 129, 132, 111 S.Ct. 2182, 2184, 115 L.Ed.2d 123 (1991); see also 18 U.S.C. Secs. 3551-3559, 3561-3566, 3571-3574, 3581-3586 and 28 U.S.C. Secs. 991-998. The Sentencing Reform Act instructs courts that defendants found guilty of most federal offenses "shall be sentenced in accordance with the provisions of this chapter so as to achieve the [sentencing] purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all of the circumstances of the case." 18 U.S.C. Sec. 3551(a).
 
 
 11
 Captioned "Imposition of a sentence," section 3553 has two subsections. Subsection (a) is titled "Factors to be considered in imposing a sentence." Courts are directed to consider several factors in imposing sentences which are "sufficient but not greater than necessary...." (internal punctuation omitted). 18 U.S.C. Sec. 3553(a). Of the seven factors identified, the district judge in the case before us correctly pointed out that the Guidelines are directly implicated by only the fourth and fifth. See Concepcion, 795 F.Supp. at 1277. Largely as a result of its reading of section 3553(a), the district court concluded that the Guidelines are not binding in every case.
 
 
 12
 Notwithstanding that the Guidelines appear to be but one of several factors to be considered by a sentencing court, the statute goes on to say that the court "shall impose a sentence of the kind, and within the [Guidelines] range ... unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission...." 18 U.S.C. Sec. 3553(b). Thus, although subsection (a) fails to assign controlling weight to the Guidelines, subsection (b) does so.
 
 
 13
 The district court believed that construing the Guidelines as the controlling factor would require a sentencing court to ignore sections 3551 and 3553(a). We disagree. Section 3551 directs district courts to bear in mind the relevant sentencing purposes set forth in section 3553(a)(2)(A)-(D). It thus bids courts to consider, before they impose sentence, to what end they do so. That is, Congress expects courts preparing to sentence to reflect, as they always have, on several traditional principles of sentencing. Section 3551 is a general statement of purpose which is entirely consistent with Congress's intent that the Guidelines bind the district courts.
 
 
 14
 In sum, section 3553 sets out, in the first instance, general factors to be considered by a court preparing to sentence. See 18 U.S.C. Sec. 3553(a). These factors are listed in no particular order because they do not represent a fixed method for sentencing. Rather, they are a statement of the principles traditionally considered by courts before the Sentencing Reform Act became law. We hold that section 3553 requires a court to sentence within the applicable Guidelines range unless a departure, as that term has come to be understood, is appropriate. See 18 U.S.C. Sec. 3553(b). And, since departures also serve the goal of imposing a sentence that is "sufficient but not greater than necessary," departures are also guided by the traditional sentencing principles listed in Sec. 3553(a).
 
 
 15
 The language of the statute, its legislative history and interpretive case law support our construction. First, the language of subsection (b) is mandatory rather than precatory. See United States v. Davern, 970 F.2d 1490, 1492 (6th Cir.1992) (en banc ), cert. denied, --- U.S. ----, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993). We reject the notion that our interpretation renders immaterial the mandate of subsection (a), directing courts to impose a sentence "no[ ] greater than necessary." The factors listed inform the court's determination of the appropriate sentence within a range. That the ranges are regretfully narrow does not change the fact that discretion informs the selection of an appropriate sentence. See United States v. Anderson, 15 F.3d 278, 280 (2d Cir.1994) (discretion has been fettered but not eradicated); United States v. Sweeney, 878 F.2d 68, 71 (2d Cir.1989) (per curiam ) (sentencing under Guidelines is not "purely mechanical task.") Congress's assumption that contemplation of the listed factors will lead a court to a just punishment is necessarily premised on its belief that the Guidelines analysis leads to a just penalty range.
 
 
 16
 Second, it is clear that Congress intended to create rigid strictures from which departure would be unusual. See S.Rep. No. 225, 98th Cong., 2nd Sess. 79 (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3262 (Senate Judiciary Committee rejected early "attempt to make the sentencing guidelines more voluntary than mandatory, because of the poor record of States ... which have experimented with 'voluntary' guidelines"); see also Kate Stith and Steve Y. Koh, The Politics of Sentencing Reform: The Legislative History of the Federal Sentencing Guidelines, 28 Wake Forest L.Rev. 223, 284 (1993) (concluding that the rigid and harsh manner in which the Sentencing Commission has implemented the Sentencing Reform Act is consistent with congressional intent).
 
 
 17
 And third, the approach adopted by the district court is contrary to the general interpretation of the Sentencing Reform Act by the federal courts. We think it plain that the Supreme Court would reject Judge Weinstein's interpretation of the governing statute. See Mistretta v. United States, 488 U.S. 361, 367, 109 S.Ct. 647, 652, 102 L.Ed.2d 714 (1989) (Sentencing Reform Act "makes the Sentencing Commission's guidelines binding on the courts, although it preserves for the judge the discretion to depart from the guideline applicable to a particular case if the judge finds an aggravating or mitigating factor present ..."); id. at 391, 109 S.Ct. at 664 ("the Guidelines bind judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases"); id. at 413, 109 S.Ct. at 676 (Scalia, J., dissenting) ("a judge who disregards [the Guidelines] will be reversed"); see also Burns, 501 U.S. at 133, 111 S.Ct. at 2184 ("only" where the requirements of 18 U.S.C. Sec. 3553(b) are met, can a district court evade "the mechanical dictates of the guidelines.")
 
 
 18
 For these reasons, we reject the analysis of the district court. We next examine whether downward departures were warranted.
 
 B. Downward Departure
 
 19
 Judge Weinstein believed that, even if this Court disagreed with his determination that the Guidelines did not govern this case, their sentences were valid as downward departures from the applicable Guidelines range. As will be made clear, we cannot decide that issue on this record.
 
 
 20
 We review de novo the decision by a district court that a circumstance is one "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." United States v. Williams, 37 F.3d 82, 85 (2d Cir.1994) (internal quotations omitted). The district court's factual findings are reviewed for clear error. Id.
 
 
 21
 The district court is not permitted to "rectify" sentencing disparities between differently-situated co-defendants. See United States v. Alba, 933 F.2d 1117, 1123 (2d Cir.1991); United States v. Joyner, 924 F.2d 454, 459-61 (2d Cir.1991). However, departures predicated on other grounds that have the ancillary effect of changing the lacuna between sentencing ranges applicable to co-defendants are permissible. See Joyner, 924 F.2d at 461. Nor is the government's good faith refusal to make a motion for downward departure pursuant to U.S.S.G. Sec. 5K1.1 a permissible ground for departure by the sentencing court. See United States v. Agu, 949 F.2d 63, 67 (2d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 2279, 119 L.Ed.2d 205 (1992); United States v. Reina, 905 F.2d 638, 641 (2d Cir.1990). Finally, the government is entitled to notice of a basis for downward departure. See Burns, 501 U.S. at 135, 111 S.Ct. at 2186; United States v. Jagmohan, 909 F.2d 61 (2d Cir.1990).
 
 
 22
 The Sentencing Commission has addressed elements that comprise character primarily through commentary, policy statements and application notes. See United States v. Merritt, 988 F.2d 1298, 1308 (2d Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 2933, 124 L.Ed.2d 683 (1993). The Guidelines direct that, among other considerations, education and vocational skills, employment record, and community and family ties and responsibilities "are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. Ch.5, pt. H, intro. comment. In an unusual case these factors may inform a discretionary departure by a sentencing court. See Merritt, 988 F.2d at 1308-09; Jagmohan, 909 F.2d at 65; United States v. Big Crow, 898 F.2d 1326, 1331-32 (8th Cir.1990).
 
 
 23
 The district court in this case had before it four low-level employees of TLC's Safety and Emissions Division whose primary responsibility was to physically inspect medallion taxicabs. Regular inspection lanes at the Woodside facility were staffed by six line inspectors; those for taxis that had received notices of violation had fewer inspectors. The inspector in position one checked the paperwork and credentials of the cab. The inspector assigned to position two investigated the emission system by inserting a probe into the tailpipe. The third inspector ran a vehicle's wheels over a test plate to verify alignment. The fourth inspector tested the car's headlights; the fifth, the brakes. The inspector assigned to the sixth position examined the undercarriage of the cab.
 
 
 24
 The appellees carried out the inspections and calculated methods for defeating the control system. Their co-defendants included senior inspectors who condoned and facilitated the scheme, as well as supervisors who promoted the operation through scheduling manipulation. The district court lamented inaction by "public officials who should have prevented the corruption," yet were not prosecuted criminally. Likewise, no taxicab company or representative was charged despite criminal conduct on their parts.
 
 
 25
 The defendants as a group were characterized by the district court as "among our best and most reliable working people." The histories of the appellees, however, are fraught with personal failures. Further, Antonucci and Abbadessa both, according to the district court, played "substantial roles" in the corruption scheme, enticing others into the scheme and aggressively soliciting payoffs. The district court's findings are not sufficient to take this case out of the "heartland," see U.S.S.G. Ch. 1, Pt. A(4)(b), p.s. Compare Jagmohan, 909 F.2d at 65 (previous employment record can be basis for departure only in exceptional cases) with Big Crow, 898 F.2d at 1331-32 (employment history, community ties and "consistent efforts to lead a decent life in a difficult environment" warranted departure.)
 
 
 26
 Nor can the fact that the government declined to provide 5K1.1 letters for the appellees permissibly influence the district court. As our cases have made clear, absent a government motion, the court cannot downwardly depart on the ground that these low-level employees had little to offer the government. See Reina, 905 F.2d at 640 (court's hands are tied in such a situation.)
 
 
 27
 We find persuasive the district court's finding that, unlike their superiors, the appellees were not in "positions of public trust that created a duty to block corrupt schemes such as this one that threatened public safety." This factor alone, however, does not support a downward departure. Further, as we have made clear, the district court's apparent reliance on the fact that these defendants did not enjoy the benefit of 5K1.1 letters, offers no support for a departure. Finally, on this record, we are unpersuaded that these appellees' personal characteristics are so extraordinary as to warrant such uncommon relief. Accordingly, we vacate the sentences and remand to allow the district court to determine whether supplemental permissible bases for downward departures exist.
 
 
 28
 We note that, with respect to Abbadessa and Antonucci, the court failed to timely apprise the government of its intention to downwardly depart. See Alba, 933 F.2d at 1120; Jagmohan, 909 F.2d at 63. As to Quinones and Hernandez, the government had adequate notice because a draft version of the district court's detailed sentencing memorandum was issued long before their sentence dates.
 
 CONCLUSION
 
 29
 For the foregoing reasons, we reject the district court's determination that the Sentencing Guidelines were not binding upon it. Further, we vacate and remand the sentences to allow the district court to determine whether mitigating factors existed to a degree not adequately considered by the Sentencing Commission.