UNITED STATES of America, Plaintiff,

v.

HOLLMAN CHEUNG, Defendant.

Lang Fang CHAU et al., Plaintiffs,

v.

HOLLMAN CHEUNG et al., Defendants.

No. CR 93–213.
No. CV 94–2479.

United States District Court,
E.D. New York.

Jan. 13, 1997.

Zachary W. Carter, United States Attorney by Jodi Levine Avergun, Assistant United States Attorney, Brooklyn, NY, for U.S.

Gary G. Becker, Law Offices of Gerald B. Lefcourt, P.C., New York City, for Defendant.

Jethro M. Eisenstein, Profeta & Eisenstein, New York City, for Plaintiffs.

WEINSTEIN, Senior District Judge:

### I. INTRODUCTION

In these related civil and criminal fraud cases, criminal restitution is utilized as a bridge to avoid extensive civil litigation. The victims are to be compensated through an integrated civil settlement and a criminal restitution order. What was in effect a civil quasi-class action is coordinated with a crimi-

nal proceeding to assure maximum recovery by the victims with minimum transactional costs.

The assigned magistrate judge, the Assistant United States Attorney (AUSA) and plaintiffs' counsel for ninety-four of the hundreds of victims engaged in lengthy negotiations to reach this result. The court held extensive post-settlement, post-plea hearings akin to those required in approving a Rule 23 class action settlement. It approved the methods of disbursing funds in both the criminal and civil cases. It also approved the civil action fee of the attorney for plaintiffs, treating it as if it had been earned in a class action even though the joinder of plaintiffs was pursuant to Rule 19 rather than to Rule 23 of the Federal Rules of Civil Procedure.

The AUSA and the cooperating Federal Bureau of Investigation (FBI) agent were substantially aided by discovery conducted by plaintiffs' attorney in the civil case. By coordination with the criminal prosecution, the civil attorney's work was reduced. Defense counsel was the same in both the civil and criminal cases. Together, the three attorneys and the FBI Special Agent in charge assisted the court in locating hundreds of victims, fixing the amounts of their losses, and discovering the assets of the defendant.

## II. Facts

Between 1989 and 1993 defendant, Hollman Cheung, participated in a series of financial service companies operating under various names including *World Bullion Profitable Bullion,* and *United Bullion,* in California and in New York. Defendant used these companies to defraud hundreds of people. Almost all of the victims were recent Chinese immigrants, many of whom had placed substantially all of their savings into what they believed to be prudent investments that would provide them and their children with financial security when they could no longer work.

In the course of these activities, defendant hired an arsonist to burn down a competitor's offices. The fraud was more successful than the fire, which failed to burn.

## III. Procedural History

Defendant was indicted on four counts of wire fraud, one count of fraud, one count of attempted arson, and one count of criminal conspiracy. He pled guilty to one count of wire fraud, 18 U.S.C. § 1343, and one count of attempted arson, 18 U.S.C. § 844(i). After extensive cooperation, he was sentenced to time served in prison (31½ months), two years supervised release, $1.25 million in restitution, and a $100 special assessment.

Ninety-four investors who had been victimized in the fraud joined to initiate a civil RICO action against defendant. 18 U.S.C. §§ 1961 *et seq.* Each plaintiff contributed voluntarily to a legal fund to defray expenses. The complaint alleged that defendant had fraudulently conspired to convert funds that plaintiffs had provided for legitimate investments in commodities, foreign currencies and precious metals.

After extensive negotiation with the aid of the magistrate judge, the civil litigation was settled for $200,000, to be used to cover the plaintiffs' attorney's fee and to provide the named civil plaintiffs with compensation. These civil proceeds are in addition to the pro-rata portion of the criminal restitution payment of $1,250,000 to be shared among all several hundred who were mulcted, including those in the civil suit. Concurrently with its sentencing judgment, the court approved the civil settlement agreement (Settlement).

## IV. Combining Criminal and Civil Proceedings

In recent years Congress and the courts have stressed restitution to victims as an important aspect of the punishment imposed on those guilty of crimes. An increasing number of American legal scholars have recognized the value of such an approach. One commentator in the early 1980s described a number of contemporary proposals to combine monetary remedies for criminal victims with prison sentences as follows:

> [J]udicial preference for restitution finds support in the Model Penal Code, ... the Model Sentencing Act, ... a recent draft of the proposed new Federal Criminal Code, ... and several other prestigious sentencing proposals. In addition, al-

though explicit criminal code provisions for some form of restitution are not quite universal, legislation authorizing or requiring its use does exist in almost every jurisdiction in the United States.

Alan T. Harland, *Monetary Remedies for the Victims of Crime: Assessing the Role of the Criminal Courts*, 30 U.C.L.A. L. Rev. 52, 55 (1982) (citations omitted).

■ Current federal law reflects this concern for the victim by emphasizing restitution as a goal of the criminal law. Section 3663(a)(1) of title 18 of the United States Code provides that "The court, when sentencing a defendant convicted of an offense under this title . . . may order, in addition to or . . . in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense." This provision permits a court hearing a criminal matter to conduct a quasi-civil investigation into the wrongs committed against each identified victim and to fix the monetary compensation required to make the victim whole. *See, e.g., United States v. Ferranti*, 928 F.Supp. 206 (E.D.N.Y.1996); *United States v. Malpeso*, 943 F.Supp. 254 (E.D.N.Y.1996).

Since the criminal sentencing court is already acting in a quasi-civil role—attempting to compensate the victims (the usual role of the civil tort system)—coordinating any civil litigation with the criminal case is both expedient and appropriate. Nevertheless, this pattern, integrating restitution orders in criminal cases and recoveries in parallel civil cases, is relatively untested. It requires further scholarly attention and common law development if the law is to avoid unnecessary problems and possible injustices while taking full advantage of this development.

For example, the district judge is properly prohibited from becoming involved in plea negotiations except to approve or disapprove the ultimate plea bargain. *See* Fed. R.Crim.P. 11(d), (e), (f); *United States v. Rahman*, 861 F.Supp. 266, 276 (S.D.N.Y. 1994) ("Rule 11(e)(1) of the Federal Rules of Criminal Procedure . . . bars the court from participating in plea negotiations"). In the instant case the court eschewed participation in negotiations in either the criminal or civil case since the settlement of the civil case

would affect the plea arrangement in the criminal case. The line is a delicate one.

Another unsolved problem is that of assuring adequate resources to the defendant to support his or her family should circumstances change after sentence. In the instant case, the fixed agreed on amounts minimized this problem. For appropriate means of dealing with this difficult issue, see discussion in *United States v. Golino*, 956 F.Supp. 359 (E.D.N.Y.1997).

Combining criminal and civil proceedings, or aspects of those proceedings, is not novel. Successful examples of consolidated criminal and civil proceedings can be observed in the Swedish and French legal systems, among others. *See United States v. Ferranti*, 928 F.Supp. 206, 218 (E.D.N.Y.1996) (discussing the French victim's right to demand civil damages in a criminal court); *see also* Richard S. Frase, *Comparative Criminal Justice as a Guide to American Law Reform: How Do the French Do It, How Can We find Out, and Why Should We Care?*, 78 Cal.L.Rev, 670–71 (1990); Ruth Bader Ginsburg & Anders Bruzelius, *Civil Procedure in Sweden*, 145–150 (1965) (court in which criminal prosecution is instituted has ancillary competence to adjudicate related civil claims).

■ The law must be particularly sensitive to the impact of a restitution order on the lives of victims. As was noted at the final sentencing hearing on October 30, 1996 attended by many of the victims:

> The Court is cognizant of the extreme hardship placed upon those who were defrauded. Many of them are recent immigrants. They are all very hard-working people. They were induced in good faith to invest their money in what they thought was a reasonable and sound scheme, and obviously, they are very upset by what happened.

*Transcript, United States v. Cheung*, 93–CR–213, October 30, 1996, at 30–31.

■ To ensure that each victim, whether a plaintiff or non-plaintiff in the civil action, receives his or her fair share of the moneys available for restitution, a number of opportunities for each of the victims to speak

directly to the court were provided, with needed interpreters. *See, e.g., Transcript, United States v. Cheung,* 93–CR–213, May 9, 1996; *Transcript, United States v. Cheung,* 93–CR–213, May 23, 1996; *Transcript, United States v. Cheung,* 93–CR–213, October 16, 1996; *Transcript, United States v. Cheung,* 93–CR–213, October 30, 1996. These proceedings can, as already noted, be likened to Rule 23 fairness hearings. In the class action context, fairness hearings "have become part of the practice and should be considered obligatory." Karin S. Schwartz et al., *Notes From the Cave: Some Problems of Judges in Dealing With Class Action Settlements,* 163 F.R.D. 369, 375 (1995). In such hearings, class members "who wish ... to be heard, ... present evidence or ... cross examine witnesses ..." *In re Joint E. & S. Dist. Asbestos Litigation,* 878 F.Supp. 473, 566 (E. & S.D.N.Y.1995), *aff'd in part, dismissed in part, and vacated in part and remanded on other grounds, In re Joint E. & S. Dist. Asbestos Lit.,* 78 F.3d 764 (2d Cir.1996).

The hearings served not only to inform the court, but to assure the victims (many of whom were unaware of the workings of the American justice system) that they were being treated fairly. The hearings "assist [the judge] in deciding whether a proposed settlement is fair, reasonable and adequate[;] judges routinely convene a hearing open to the public at which the merits and flaws of the proposed settlement are discussed and debated." Schwartz, *Notes From the Cave,* supra, at 375.

■ Victims must be given an opportunity to be heard. *Cf.* 18 U.S.C. § 3593 (death penalty cases); *United States v. Naugle,* 879 F.Supp. 262, 268 (E.D.N.Y.1995) (non-death penalty cases). Mandatory presentence reports must provide:

> verified information, stated in a nonargumentative style, containing an assessment of the financial, social, psychological, and medical impact on any individual against whom the offense has been committed.

Fed.R.Crim.P. 32(b)(4)(D). Sound policy and practice, as well as the need for consistent application of criminal law, mandate allowing crime victims to be heard by the sentencing judge. In addition to providing the court with necessary information pertinent to sentencing, the opportunity to speak provides catharsis for the victim.

With its numerous victims and one attorney representing a large number of victims, the instant case suggests many similarities to the class action. Restitution-civil Rule 19 or Rule 23 fairness hearings are of crucial importance in fashioning the most equitable judgement possible under the circumstances. It matters not for purposes of the fairness hearing and fee hearing under these circumstances that consolidation in the civil case took place under Rule 19 rather than Rule 23 or that the civil claimants had arranged privately for an attorney's fee. *See Adkins v. Hoechst Celanese Corp. (the Polybutylene Cases),* No. 92–24674 (Dist.Ct.Tex. Nov. 18, 1996) (court fixed fee, despite private fee arrangement, to provide a reasonable fee and to maximize recovery to clients); Alison Frankel, *Greedy,* American Lawyer, Nov. 1996, at 71.

■ The law requires that in fixing restitution the court consider the on-going financial needs of defendant's spouse and dependant children. *See* 18 U.S.C. § 3364(a) (requiring the sentencing court, among other things, to consider "the financial needs and earning ability of the defendant and the defendant's dependents"); *United States v. Ferranti,* 928 F.Supp. 206 (E.D.N.Y.1996). It does not mandate that those involved in parallel litigation be protected. Thus, restitution might have been ordered which required payment of *all* defendant's assets in restitution. This would have left nothing for the civil litigants except for the funds which would have had to be made available in the criminal case—but not the civil case—for the defendant's family. Such a result would have been unfair to the civil attorney and his clients who had rendered substantial assistance in the criminal prosecution. It might also have unfairly penalized defendant's family. The $1,250,000 in restitution plus the $200,000 in the civil judgment, plus the amounts left for defendant's family, has stripped the defendant of all his assets.

## V. CONCLUSION

In the criminal case, *United States v. Cheung,* CR 93–213, the court has sentenced

the defendant to time served in prison (31½ months) and two years supervised release, and has ordered him to pay a $100 special assessment and make restitution payments of $1.25 million according to a schedule provided in the judgment. In the companion civil case, *Chau et al. v. Cheung et al.*, CR 94–2479, the court approves the Settlement of $200,000. Payments will be disbursed cooperatively by the AUSA and plaintiffs' counsel in accordance with the restitution order and Settlement.

So ordered.