**UNITED STATES of America, Appellee,**

v.

**Andre ROGERS, Defendant–Appellant.**

**No. 1550, Docket 92–1066.**

United States Court of Appeals, Second Circuit.

Argued May 22, 1992.

Decided Aug. 12, 1992.

Henriette D. Hoffman, New York City (The Legal Aid Soc., of counsel), for defendant-appellant.

Julie E. Katzman, Asst. U.S. Atty., Eastern District of New York (Susan Corkery, Asst. U.S. Atty., Eastern District of New York and Andrew J. Maloney, U.S. Atty., Eastern District of New York, of counsel), for appellee.

Before: PRATT and ALTIMARI, Circuit Judges, and KELLEHER, District Judge.*

ALTIMARI, Circuit Judge:

Defendant-appellant Andre Rogers appeals from a judgment of conviction entered in the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge*), following his plea of guilty to bank robbery, in violation of 18 U.S.C. § 2113(a). On appeal, Rogers challenges only his sentence, contending that the district court improperly refused to consider his request for a downward departure based on Rogers's extraordinary acceptance of responsibility.

For the reasons set forth below, we vacate the judgment of the district court and remand for re-sentencing.

---

* The Honorable Robert J. Kelleher, *Senior Judge,* United States District Court for the Central District of California, sitting by designation.

## BACKGROUND

On September 21, 1991, Andre Rogers entered a Chase Manhattan Bank in Queens and demanded that a bank employee give him $1,000. Rogers, who was high on cocaine, told the employee, "I'm a crack addict, you don't want to get hurt." The employee went with Rogers to a teller window and asked another employee for the money, which she then gave to Rogers. Fearing that he was under police surveillance, Rogers forced the bank employee to accompany him outside, then fled the scene.

The next day, after the effects of the crack had worn off, Rogers voluntarily surrendered to the police and confessed to the bank robbery. He explained to authorities that he had surrendered because his previous attempts at drug rehabilitation had failed and that he knew he needed help—which he hoped he would get in prison. Rogers subsequently pleaded guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a) in the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge*).

On November 22, 1991, Rogers wrote to the probation officer preparing his pre-sentence report and requested a downward departure for his surrender and confession one day after his commission of the crime. The probation department rejected Rogers's request for departure. Because Rogers had prior felony convictions for violent offenses, his pre-sentence report recommended that he be treated as a career offender, thereby resulting in an offense level of 32 and a criminal history category of VI. The pre-sentence report accorded Rogers a standard two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a).

On January 10, 1992, Rogers wrote a letter to the court reiterating his request for a downward departure based on his actions in surrendering and confessing to the police. At sentencing on January 17, 1992, the court entertained argument on Rogers's request but denied the downward departure, explaining:

Mr. Rogers, you are standing here and you are part of what is an everyday tragedy. You are a tragedy because you are a casualty of a terrible drug epidemic. You say to yourself that "I am not a criminal," but if you look at your record, you have three prior convictions for serious violent crimes, and that is sad. It's also a tragedy that you are being sentenced pursuant to the sentencing guidelines. And the sentencing guidelines mandates that you be sentenced in accordance with a certain formula, and although it gives the Court some discretion, it leaves very little discretion for the Court.

I think that I would be persuaded by your pleas and the eloquent pleas of your counsel if you did not have this particular record, and I think that you should get [credit] for turning yourself in, and you are getting credit for turning yourself in.

As you know, this matter falls within the sentencing guideline and you could be sentenced to anywhere between 168 months, which is 14 years and 210 months, which is more time than that.

The court sentenced Rogers to 168 months imprisonment to be followed by three years supervised release and a mandatory special assessment of $50. After pronouncing sentence the court stated:

You are a career offender and I think 168 months is warranted, since you must be sentenced under the sentencing guidelines....

You made a mistake, you're being sentenced. You might think its harsh, maybe it is harsh, but I think it is adequate.

Rogers now appeals.

## DISCUSSION

On appeal, Rogers contends that the district court erred in refusing to grant a downward departure for his voluntary surrender and confession to his crime. A sentencing court may impose a sentence outside the range established by the applicable guideline if the court finds "that there exists an aggravating or mitigating circum-

stance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b) (1988). The Sentencing Guidelines themselves list several factors which may constitute a basis for departure. *See* U.S.S.G. §§ 5K2.1, p.s.–5K2.16, p.s. This list is not, however, exhaustive, and leaves "the application of other factors to the discretion of the sentencing judge." *United States v. Lara,* 905 F.2d 599, 602 (2d Cir.1990); *see also* U.S.S.G. § 5K2.0.

Whether the existence of certain factors warrants departure is a legal question which we review *de novo. See United States v. Mickens,* 926 F.2d 1323, 1332 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 940, 117 L.Ed.2d 111 (1992); *United States v. Joyner,* 924 F.2d 454, 459 (2d Cir.1991). However, a district court's refusal to grant a downward departure is not reviewable unless it was made under the mistaken conclusion that, as a matter of law, the court did not have the authority to depart. *See United States v. Ritchey,* 949 F.2d 61, 63 (2d Cir.1991); *United States v. Richardson,* 923 F.2d 13, 15 (2d Cir.1991).

The issues presented therefore, are: (1) whether Rogers's voluntary surrender and confession one day after the bank robbery constitute mitigating factors not considered by the Sentencing Guidelines; and, if so: (2) whether the district court denied Rogers's motion for a downward departure under the mistaken impression that it lacked the authority to depart.

## I. *The Existence of Mitigating Factors*

Rogers points to several factors present in his case which he claims warrant a downward departure below the two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. These are: (1) his surrender one day after committing the robbery; (2) his full confession and cooperation with law enforcement authorities; (3) his acknowledgment that the crime was the result of a crack addiction for which he unsuccessfully had sought help; and, (4) his acknowledgment that he should go to prison and attempt rehabilitation to

salvage the remainder of his life. Rogers contends that these factors warrant a downward departure for his "extraordinary acceptance of responsibility" which this Court indicated may provide an appropriate basis of departure in *Mickens,* 926 F.2d at 1332–33. In addition, Rogers argues that the Guidelines themselves contemplate the appropriateness of such a departure in the analogous context of a defendant who voluntarily discloses an offense which law enforcement authorities might not otherwise have discovered. *See* U.S.S.G. § 5K2.16, p.s.

In contrast, the government contends that because Rogers is a career offender, neither "extraordinary acceptance of responsibility" under *Mickens,* nor "voluntary disclosure of the offense," is available as a basis of departure. Specifically, the government argues that prior to a November 1989 amendment to the Guidelines, career offenders were held to be ineligible for the standard two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. From this, the government reasons that had the Sentencing Commission wished to make career offenders eligible for a departure such as this, they would have so provided when they amended the career offender section to include adjustments under § 3E1.1.

At issue is the appropriate scope of a sentencing court's power to depart from an otherwise applicable Guidelines range. We therefore begin by examining the nature of this power.

A district court's authority to depart from the Sentencing Guidelines is statutory and is grounded in the proposition that the Guidelines do not adequately consider a certain aggravating or mitigating factor in assessing a defendant's sentencing range. *See* 18 U.S.C. § 3553(b) (1988); *see also Williams v. United States,* —— U.S. ——, 112 S.Ct. 1112, 1118, 117 L.Ed.2d 341 (1992). The Guidelines themselves recognize that a "sentencing system tailored to fit every conceivable wrinkle of each case would quickly become unworkable and seriously compromise the certainty of punishment and its deterrent effect." U.S.S.G.

Ch. 1., Pt. A, intro. In recognition of the necessary limitations of the Guidelines framework and of a sentencing court's statutory authority to depart from the prescribed formula, the Sentencing Commission describes the Guidelines as "carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." *Id.* The Commission explains that "[w]hen a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." *Id.*

Viewed as a whole, the authority to depart provides a "sensible flexibility" to insure that atypical cases are not shoehorned into a Guidelines range that is formulated only for typical cases. *See, e.g., Lara,* 905 F.2d at 603. This Court has recognized the propriety of departures in widely varying circumstances. *See, e.g., United States v. Johnson,* 964 F.2d 124, 129 (2d Cir.1992) (number, age and circumstances of children in sole custodial care of defendant constitute "extraordinary parental responsibilities" warranting departure); *United States v. Skinner,* 946 F.2d 176, 179 (2d Cir.1991) (departure could be considered from Guidelines range for money laundering where there was only *de minimis* evidence that transaction was entered into to promote or conceal narcotics trafficking); *United States v. Jagmohan,* 909 F.2d 61, 65 (2d Cir.1990) (downward departure may be warranted for defendant's lack of sophistication in "unsurreptitiously" bribing official with personal check); *Lara,* 905 F.2d at 605 (downward departure warranted where defendant's physical and emotional condition made him particularly vulnerable in a prison setting). We therefore, consider whether in the instant case, Rogers's voluntary surrender and confession constitute similarly atypical and mitigating factors.

A defendant who pleads guilty is routinely afforded a two-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. In *Mickens,* this Court held that a defendant who exhibits a higher degree of contrition than contemplated by

§ 3E1.1 "may, in an appropriate case, [receive] a downward departure." 926 F.2d at 1332. The rationale of *Mickens* is that a defendant who realizes his wrongdoing and acts quickly to accept culpability for his crime may deserve more favorable treatment than one who only agrees to plead guilty in the face of a forcible arrest and federal prosecution.

■ We find nothing in the Guidelines which contemplates a defendant like Rogers, who, emerging from a drug-induced state and realizing his wrongdoing, turns himself over to the police and confesses. Under our reasoning in *Mickens,* conduct such as this raises a colorable basis for a downward departure. *See also United States v. Crumb,* 902 F.2d 1337, 1339–40 (8th Cir.1990) (voluntary surrender nine days after issuance of warrant was appropriate grounds for departure in sentence).

■ Moreover, we find unpersuasive the government's contention that by its silence, the Sentencing Commission implicitly rejected the availability of such departures for defendants deemed to be "career offenders"—a categorization which "dramatically increases the base offense level for sentence computation and mandates use of a criminal history category of VI." *Richardson,* 923 F.2d at 15; *see* U.S.S.G. § 4B1.1. Under the government's interpretation of the Guidelines, a two-level reduction for acceptance of responsibility is all that is afforded any career offender no matter how contrite and no matter how unlikely his capture without his cooperation. The government proposes exactly what Congress rejected when it enacted the Guidelines—a rigid, mechanized application which straitjackets a sentencing court. *See Lara,* 905 F.2d at 604; *see also* S.Rep. No. 225, 98th Cong., 2d Sess. 52, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3285. Contrary to the government's argument, there is nothing unique to career offender status which would strip a sentencing court of its "sensible flexibility" in considering departures. *See United States v. Sturgis,* 869 F.2d 54, 57 (2d Cir.1989) (quoting *United*

*States v. Correa–Vargas,* 860 F.2d 35, 40 (2d Cir.1988)).

The career offender provision of the Guidelines implements a Congressional directive that career offenders be sentenced at or near the statutory maximum. 28 U.S.C. § 994(h) (1988). This Congressional mandate aimed at discouraging the familiar pattern of repeat offenders by meting out "harsh treatment" for "violent or drug-related felony recidivism." *Richardson,* 923 F.2d at 16. As expressed by one legislator: "Career criminals must be put on notice that their chronic violence will be punished by maximum prison sentences for their offense without parole." 128 Cong. Rec. 26,518 (Sept. 30, 1982) (statements of Sen. Kennedy, sponsor of a bill that later became 28 U.S.C. § 994(h)). In directing the Sentencing Commission to follow this instruction, Congress sought a "consistent and rational implementation." S.Rep. No. 225, at 175, *reprinted in* 1984 U.S.C.C.A.N., at 3358.

In light of this underlying purpose, it is illogical to conclude that either Congress or the Sentencing Commission meant to exempt career offenders from the operation of a district court's statutory departure power. This is especially apparent when, as here, a departure is based on a career offender's uncoerced plea for help in combatting his drug-related tendencies toward recidivism. As with other categories of criminals, career offenders must be encouraged to come forward and end their life of crime. *See United States v. Maddalena,* 893 F.2d 815, 817–18 (6th Cir.1989) (sentencing court may consider career offender's efforts to avoid drugs as departure factor in sentence for armed bank robbery); *cf. United States v. Wright,* 924 F.2d 545, 549 (4th Cir.1991) (considering but rejecting postponement of parole as an appropriate grounds for departure for a career offender); *Richardson,* 923 F.2d at 17 (considering but rejecting a departure for a career offender based on small quantity of drugs as a factor already considered by Guidelines); *United States v. Hays,* 899 F.2d 515, 519–20 (6th Cir.) (same), *cert. denied,* — U.S. —, 111 S.Ct. 385, 112 L.Ed.2d 396. (1990).

Moreover, every circuit to have decided the issue has held that like other offenders, career offenders are eligible for downward departures from their calculated ranges where, despite their qualification for career offender status, their criminal history is inappropriately represented. *See* U.S.S.G. § 4A1.3, p.s.; *United States v. Bowser,* 941 F.2d 1019, 1023 (10th Cir.1991); *United States v. Adkins,* 937 F.2d 947, 951 (4th Cir.1991); *United States v. Lawrence,* 916 F.2d 553, 554–55 (9th Cir.1990); *United States v. Brown,* 903 F.2d 540, 544–45 (8th Cir.1990); *cf. United States v. Norflett,* 922 F.2d 50, 54 n. 5 (1st Cir.1990). The government does not argue otherwise. If a career offender is eligible for a departure based on past conduct, which is the basis for his status as a career offender, we can see no reason why he should not be similarly eligible for a departure based on present conduct, which is the basis for his conviction and sentence. *See Adkins,* 937 F.2d at 952 (describing career offender status as "a shortcut to Category VI" and holding that "once a defendant has taken this shortcut" there is "no reason why he should not stand on an equal footing with everyone else whose criminal history calculation is Category VI").

A career offender who swiftly moves to accept blame for his actions, in the absence of any threat of arrest or prosecution, is no less deserving merely because in the past, he did not exercise such laudable judgment. Indeed, the amendment of the Guidelines to indicate that a career offender was eligible for a § 3E1.1 adjustment for acceptance of responsibility, suggests that the Commission agrees that acknowledgement of guilt should be considered at sentencing, regardless of a defendant's criminal history. We therefore hold that the factors present in Rogers's case may, in the discretion of the court, provide an appropriate basis for a downward departure.

## II. *The District Court's Refusal to Depart*

Rogers contends that the district court erroneously believed itself without authority to consider a departure based on the

factors present in his case. Consequently, Rogers seeks a remand to enable the district court to examine whether the circumstances warrant such action. In contrast, the government contends that the district court refused Rogers's motion on its merits and not because it perceived itself constrained to remain within the Guidelines formula.

■ After examining the record, we conclude that the basis for the district court's refusal to grant the departure is ambiguous. Yet despite this ambiguity, Judge Johnson's statements readily reveal his desire to fulfill the traditional role of a district judge in bringing compassion and common sense to the sentencing process. In the tangled wake of the Sentencing Guidelines, there is a danger that district judges will conclude in frustration that this role has been eradicated. *See United States v. Concepcion*, 795 F.Supp. 1262 (E.D.N.Y. 1992) ("There is a temptation to simply skirt these underlying concerns and entrust the task of punishment to the federal Sentencing Guidelines."); *see generally* Daniel J. Freed, *Federal Sentencing in the Wake of the Guidelines: Unacceptable Limits on the Discretion of Sentencers*, 101 Yale L.J. 1681 (1992). Indeed, the district court's statement, that the sentence imposed at the low end of the range was "harsh" but that Rogers "must be sentenced under the guidelines," indicates the court's belief that it had no discretion to sentence below the applicable range. Where an appropriate basis for a departure is presented, but a sentencing court refuses to grant a departure under circumstances suggesting that the district court erroneously believed itself without authority to depart, remand is warranted. *See Ritchey*, 949 F.2d at 63.

We wish to be clear that on remand, we express no opinion as to whether the particular factors present in Rogers's case, in fact, warrant a downward departure. This determination properly remains within the sound discretion of the district court. *See, e.g., Sturgis*, 869 F.2d at 56–57. Our decision is intended only to permit the district court to exercise this discretion.

## CONCLUSION

Based on the foregoing, the judgment of the district court is vacated and the case remanded for re-sentencing consistent with this opinion.