UNITED STATES of America

v.

**Nicola DeRIGGI, Michael Antonucci, Alfred Abbadessa, Ismael Hernandez, Raymond Quinones, and Anthony Barone, Defendants.**

**No. 92–CR–925.**

United States District Court,
E.D. New York.

July 12, 1995.

**173**

Myles H. Malman, Miami, FL, for Nicola DeRiggi.

Ronald Rubinstein, Queens, NY, for Michael Antonucci.

Barry Teller, Forest Hills, NY, for Alfred Abbadessa.

Daniel Noble, New York City, for Ismael Hernandez.

John Burke, Brooklyn, NY, for Raymond Quinones.

Bettina Schein, New York City, for Anthony Barone.

Zachary Carter, by Gordon Mehler, U.S. Atty., E.D.N.Y., Brooklyn, NY, for U.S.

*MEMORANDUM AND ORDER*

WEINSTEIN, Senior District Judge:

Table of Contents

I. INTRODUCTION .................................................. 174
II. FACTS AND PROCEDURAL HISTORY ............................... 175
   A. Sentencing memorandum ......................................... 175
   B. Appeal ........................................................ 176
   C. Appellate court opinions ....................................... 176
   D. Proceedings on remand ......................................... 176
III. LAW ......................................................... 176
   A. Courts must consider all facts and circumstances known at the time of sentencing ................................................... 176
   B. Historical basis of the rule that courts must consider all facts and circumstances known at the time of sentencing ........................ 177
   C. Support in Sentencing Guidelines for the rule that courts must consider all facts and circumstances known at the time of sentencing ............. 177
   D. Support in court of appeals opinions for the rule that courts must consider all facts and circumstances known at the time of sentencing .......... 178
     1. Post-offense conduct and Guidelines departures .................. 178
     2. Post-offense conduct and Criminal History ....................... 178
   E. Application at resentencing of rule that courts must consider all facts and circumstances known at the time of sentencing ..................... 178
     1. A resentence is a sentence ...................................... 178
     2. Judge must use all information available up until time of resentence 179
   F. Caselaw imposing temporal limits on fact-finding ................... 180
   G. Departures based on "character of the offender" ................... 181
     1. Inordinate effects on others ................................... 182
     2. Inordinate effect on defendant ................................. 182
   H. Application of grounds for departure at resentencing following successful appeal by the government ........................................ 183
IV. APPLICATION OF LAW TO FACTS ................................. 183
   A. Generally ..................................................... 183
   B. Individual cases ............................................... 183
     1. Ramon Quinones ............................................. 183
     2. Michael Antonucci ........................................... 183
     3. Alfred Abbadessa ............................................ 184
     4. Ismael Hernandez ............................................ 184

     5.    Anthony Barone ........................................... 184
     6.    Nicola DeRiggi ............................................ 185
   C.  Summary of grounds for departure ............................... 185
V.  CONCLUSION ............................................... 185

## I. INTRODUCTION

Thirty employees of the Taxi & Limousine Commission accepted bribes to overlook defects in taxis they inspected and to certify inspections that never took place. All thirty pled guilty to the same offense, conspiracy to commit extortion, 18 U.S.C. § 1951(a). Their degree of culpability varied widely. Some defendants organized the operation; others followed the organizers' instructions.

At the initial sentencing, the district court recognized the importance of sentencing defendants in proportion to their culpability. For reasons explained below, strict application of the Sentencing Guidelines would have required the court to impose longer prison terms on some of the least culpable offenders than on some of the leaders. To avoid a result so contrary to the statutory scheme and proper purposes of sentencing, the court sentenced pursuant to section 3553(a) of Title 18. *See United States v. Abbadessa*, 848 F.Supp. 369 (E.D.N.Y.1994); *United States v. Concepcion*, 795 F.Supp. 1262, 1275–81 (E.D.N.Y.1992).

The court of appeals reversed as to the six defendants whose sentences were appealed. Holding that the Guidelines are binding, independent of the underlying statutory pattern and regardless of result, it vacated the sentences and remanded for resentencing. *United States v. DeRiggi*, 45 F.3d 713, 719 (2d Cir.1995) [*DeRiggi I*].

On resentencing pursuant to the mandate of the court of appeals, the Guidelines must be interpreted in light of the traditions and purposes of sentencing in imposing the most rational sentences the system will permit. The sentencing court must consider the facts as it finds them at the time of resentence. Additional facts supplement those considered at the time of the first sentence.

For example, at the time of resentencing by this court, one defendant was eight days away from the end of his term. He was well into the deinstitutionalization process. He had moved to a community facility to assist in obtaining employment, and had begun psychologically to reestablish family ties. His children—three of whom appeared in court—awaited his arrival home with intense anticipation. To add a second year to his sentence would have been cruel, and would have exacted a far higher price from the defendant and his family than the imposition, at the outset, of a significantly longer prison term.

Another defendant had already been released. He described in detail his efforts to reestablish ties with his wife and two children since his return home. The relationships had been severely strained by his incarceration. To send the defendant back to prison would have had far more serious consequences than initial imposition of a longer term.

Considering new circumstances on remand not known to the court of appeals does not violate the mandate rule. The power to depart under the Guidelines allows the court to dip below the Guidelines ranges in response to factors not adequately considered by the Sentencing Commission in the formulation of the Guidelines. In the instant case, one such factor is the hardship created when a defendant—released or soon to be released—is resentenced to a longer term after appeal. This factor was not considered by the sentencing commission in the formulation of the Guidelines; it constitutes a valid ground for departure. This kind of resentencing hardship can also be seen as exacerbating extraordinary family circumstances. Family circumstances are an established ground for departure in this circuit.

This memorandum considers the effects of the court of appeals mandate in this case; the general principles followed on remand; and the specific considerations in each of the cases before the court for resentencing. In sentencing, the most personal of interactions

between the law and the individual, a face-to-face encounter between judge and defendant is required. For a court to sentence without seeing and assessing the complex myriad of relationships and personalities involved derogates the human element of the law and the duty to provide individualized justice.

## II. FACTS AND PROCEDURAL HISTORY

### A. Sentencing memorandum

The initial sentencing memorandum, *United States v. Abbadessa*, 848 F.Supp. 369 (E.D.N.Y.1994), explored the lack of "fit" between the Guidelines and the circumstances of this case:

> [The Guidelines] calculations assume that each defendant is responsible for the entire $208,000 gained from the fraudulent scheme. If the Guidelines as written and interpreted by probation and the government were applied to these defendants by the court, the defendants who were not in positions of authority and who played the most minor role in the scheme would be held responsible for the total amount of money received by all conspirators, not the small amounts they personally received in bribes. Since a number of the minor defendants received no 5K1.1 letter—even though they sincerely tried to cooperate—and the most culpable received such a letter—being in a position to know and reveal details of the entire scheme—the least culpable would end up with the highest prison terms....

848 F.Supp. at 380–81. The court noted that "[t]he position of the defendant in the inspector hierarchy is a critical factor in determining an appropriate sentence." *Id.* at 383. In particular, the supervisors deserved the harshest sentences because they

> had special responsibilities.... They held positions of public trust that created a duty to block corrupt schemes such as this one that threatened public safety.

*Id. Cf. United States v. Khan*, 53 F.3d 507, 518–19 (2d Cir.1995) (approving upward departure for leader of Medicaid fraud scheme

given defendant's role "in inducing others to abuse positions of trust" and in "undermin[ing] the public's confidence in government systems"). The Guidelines do not lend themselves to such proportionate sentencing. *Cf.* Reena Raggi, *Local Concerns, Local Insights: Further Reasons for More Flexibility in Guideline Sentencing*, 5 Fed.Sent.R. 306 (1990) (rigidity of Guidelines is "most starkly presented in multi-defendant cases where an experienced trial judge ... is confronted with guidelines that produce sentencing ranges considerably at odds with the judge's own perception of the relative culpability of the various individuals.").

The court conducted extensive factfinding to determine the appropriate sentence for each defendant. It did this with the help of both the government and the probation department. The former described each defendant's participation in the scheme—that is to say, the character of the offense. The latter provided information on the character of the offender. Both are part of any proper sentencing determination. *See Witte v. United States*, —— U.S. ——, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (describing importance of both character of offense and character of offender in reaching sentencing decision).

Based on this information, the court developed a hierarchy of sentences, ranging from 36 months in prison for the leaders to three months' home confinement for the least culpable defendants.

> The chief supervising inspector will receive thirty-six months of imprisonment.... The two supervising inspectors will receive 24 and 30 months imprisonment. The three senior inspectors will receive 18, 15, and 13 months imprisonment. The line inspectors will receive between 6 and 12 months imprisonment with the exception of one defendant with a prior criminal record who will receive 15 months ..., and several defendants who played extremely minor roles will be incarcerated in a community treatment facility or in home confinement.

*Id.* at 383. The court also imposed appropriate fines, restitution, special assessments, and periods of supervised release. For a

discussion of the sentencing statutes and their background, *see United States v. Abbadessa,* 848 F.Supp. 369 (E.D.N.Y.1994); *United States v. Concepcion,* 795 F.Supp 1262, 1275–81 (E.D.N.Y.1992).

## B. Appeal

The government appealed the sentences of four of the thirty defendants: Michael Antonucci and Alfred Abbadessa (who were sentenced to twelve months in prison); Raymond Quinones (who received eleven months); and Ismael Hernandez (nine months). All four were line inspectors, responsible for carrying out inspections. Each would have received a sentence of 24 to 30 months under the Guidelines, absent departure.

Two other defendants appealed. Anthony Barone contested his 24–month sentence, which this court had imposed in light of his supervisory position. Nicola DeRiggi challenged his 36–month sentence, imposed in light of his role as the leader.

## C. Appellate court opinions

In the cases contested by the government, the court of appeals held that all defendants must be "sentence[d] within the applicable Guidelines range unless a departure, *as that term has come to be understood,* is appropriate." *DeRiggi I,* 45 F.3d at 716 (emphasis added). It vacated and remanded for resentencing.

In the months that followed, other panels of the court of appeals decided the appeals of Barone and DeRiggi. Noting that "Barone was sentenced in essentially the same manner as were his co-defendants in *DeRiggi,* " the Court of Appeals vacated and remanded for resentencing in accordance with the Guidelines. *United States v. Barone,* No. 94–1302 (2d Cir. Feb. 22, 1995) (unpublished), at 2. It reached the same result in *United States v. Deriggi,* No. 94–1198, 54 F.3d 765 (2d Cir. Apr. 5, 1995) (unpublished) [*Deriggi II* ].

## D. Proceedings on remand

On remand, the sentencing court conducted a full evidentiary hearing for each defendant. It found circumstances supporting departure downward that had existed, but which had not been relied upon, at the original sentencing hearings. It also discovered relevant circumstances that had developed since the original sentences and appeals. The sentencing court considered all available information in the light of the principles set forth by the court of appeals on remand.

## III. LAW

### A. Courts must consider all facts and circumstances known at the time of sentencing

■ That the Guidelines are binding does not diminish the court's obligation to consider all the facts and circumstances before it at the time of sentencing. As the Supreme Court stated in its most recent description of sentencing procedure under the Guidelines, "as a general proposition, a sentencing judge 'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.' " *Witte v. United States,* ― U.S. ―, ―, 115 S.Ct. 2199, 2201, 132 L.Ed.2d 351 (1995) (quoting *Nichols v. United States,* ― U.S. ―, ―‑―, 114 S.Ct. 1921, 1927–28, 128 L.Ed.2d 745 (quoting *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 590, 30 L.Ed.2d 592 (1972))). This holding is consistent with Congress' directive that *"[n]o limitation* shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court ... may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 (emphasis added). In *Witte,* the Supreme Court observed that recognition of the sentencing judge's broad factfinding powers stretches back to the Colonial era and beyond. *Witte,* ― U.S. at ―, 115 S.Ct. at 2205; *cf.* 4 John Winthrop Papers 468–84, *A Defense of Discretionary Justice* (1644), *reprinted in* Bradley Chapin, *Criminal Justice in Colonial Amer-*

*ica, 1606–1660* 18 (1983) (if the penalty were fixed, "any Schoolboye might pronounce it: and then what need of any speciall wisdome, learninge, Courage, zeale or faithfulnesse in a Judge?").

The Guidelines embody the traditional view of the judge's broad factfinding powers. *See* U.S.S.G. § 1B1.4 ("[T]he court may consider, without limitation, any information concerning the background, character and conduct of the defendant unless otherwise prohibited by law."). According to the Commission, § 1B1.4 is based on a statute—18 U.S.C. § 3661—enacted in 1984 with an effective date of 1987, "mak[ing] it clear that Congress intended that no limitation would be placed on the information that a court may consider in imposing an appropriate sentence under the future guideline sentencing system." U.S.S.G. § 1B1.4, Commentary.

Consistent with this rule, no temporal limitation is placed on the facts considered by the sentencing judge. Judges can and must consider all information available to them at the time of sentencing. Accomplishing the purposes of sentencing demands this by requiring the court to consider not only the crime but the criminal at the time of sentence. *See* 18 U.S.C. § 3551 *et seq.*

**B. Historical basis of the rule that courts must consider all facts and circumstances known at the time of sentencing**

Prior to the Twentieth Century, defendants were usually sentenced within hours of a verdict or plea. Thus, the issue of post-guilt-determination conduct as a factor at sentencing rarely arose.

The length of time between guilt-determination and sentencing has grown dramatically as a result of the need, in light of modern views of sentencing, to gather as much information about the defendant as possible. *See, e.g., United States v. Grayson,* 438 U.S. 41, 47–52, 98 S.Ct. 2610, 2614–17, 57 L.Ed.2d 582 (1978) (recounting history of rehabilitation model and accompanying fact-finding procedures); *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949)

("Highly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics."). By the 1970's, the court of appeals for the Second Circuit noted that the preparation of a presentence report required an average of sixty days. *United States v. Manuella,* 478 F.2d 440, 440 (2d Cir.1973). Today, the lag between guilt-determination and sentencing in this circuit often exceeds two months. *See, e.g.. United States v. Ukpabia,* No. 93–1788, 47 F.3d 1159 (2d Cir. Jan. 30, 1995) (unpublished) (defendant was "not prejudiced" by fifteen-month delay between guilty plea and sentencing). Increasingly, this means that post-plea or post-trial conduct will be raised at sentencing proceedings. That guilt-finding and sentencing have been separated precisely so that the court will have complete information on the offender at the time of sentencing implies that there is no reason for the court to ignore any relevant pre-sentence conduct.

**C. Support in Sentencing Guidelines for the rule that courts must consider all facts and circumstances known at the time of sentencing**

The Guidelines recognize, in a number of frequently applied provisions, that no temporal limits are placed on relevant facts that may be considered by the sentencing judge. In fact, judges often consider post-offense conduct pursuant to Guidelines directives. For example, one of the most common grounds for upward departure is obstruction of justice. The applicable Guidelines section explicitly contemplates consideration of post-offense conduct. *See, e.g.,* U.S.S.G. § 3C1.1, application note 3(h) (providing false information in connection with presentence report can constitute obstruction of justice). Similarly, Guidelines § 3E1.1 provides for downward adjustment for acceptance of responsibility, a factor that requires the court to weigh post-arrest conduct.

Section 5K1.1 permits the court to depart downward if the defendant provides substantial assistance to the government. In this and other districts, it is common for sen-

tences to be adjourned repeatedly while defendants "complete" their cooperation. This practice makes clear not only that post-arrest conduct can be considered at sentencing, but that the timing of sentencing can be used to influence the very conduct that is to be considered.

### D. Support in court of appeals opinions for the rule that courts must consider all facts and circumstances known at the time of sentencing

"[E]very ... circuit" that has considered the question has held that courts can consider "a defendant's post-offense, pre-sentence conduct" at sentencing. *United States v. Myers*, 41 F.3d 531, 533 (9th Cir.1994) (citing, inter alia, *United States v. Keats*, 937 F.2d 58, 66 (2d Cir.), *cert. denied*, 502 U.S. 950, 112 S.Ct. 399, 116 L.Ed.2d 348 (1991)). *Keats*, holding that a defendant's criminal history category can be increased to reflect post-arrest conduct, is discussed in Part III. D.2, *infra*.

#### 1. Post-offense conduct and Guidelines departures

The courts of appeals have recognized that post-offense conduct can constitute grounds for departure. For example, post-arrest "drug rehabilitation [is] a permissible ground for departure." *United States v. Maier*, 975 F.2d 944, 949 (2d Cir.1992); *cf. United States v. Maddalena*, 893 F.2d 815, 818 (6th Cir. 1989). *But see United States v. Ziegler*, 1 F.3d 1044, 1047–48 (10th Cir.1993) (post-arrest rehabilitation not valid grounds for departure, but may be considered under "acceptance of responsibility" provision of Guidelines).

In *Maier*, the leading case on post-offense rehabilitation in the Second Circuit, the defendant's sentencing was postponed for more than a year while she obtained drug treatment. The court of appeals found the adjournments—and the subsequent departure—to be proper. *Cf. United States v. Antone*, No. 91–10417, 1992 WL 122242, 1992 U.S.App. LEXIS 13569, at *4 (9th Cir. June 3, 1992) (court may consider post-offense

good behavior in calculating discretionary departure); *United States v. Barry*, 961 F.2d 260, 266 (D.C.Cir.1992) (approving resentencing when the district court permitted defendant to provide "updated information concerning his rehabilitation efforts and the community service he had performed between the first and second sentencings").

#### 2. Post-offense conduct and Criminal History

The court of appeals for the Second Circuit has held that criminal history scores can be adjusted to account for post-offense conduct. *See United States v. Keats*, 937 F.2d 58, 66 (2d Cir.) (criminal history category can be increased to reflect post-arrest conduct), *cert. denied*, 502 U.S. 950, 112 S.Ct. 399, 116 L.Ed.2d 348 (1991); *United States v. Espinal*, 981 F.2d 664 (2d Cir.1992) (same). At least five other circuits have reached the same conclusion. *See United States v. Fayette*, 895 F.2d 1375, 1380 (11th Cir.1990); *United States v. Geiger*, 891 F.2d 512 (5th Cir.1989), *cert. denied*, 494 U.S. 1087, 110 S.Ct. 1825, 108 L.Ed.2d 954 (1990); *United States v. Franklin*, 902 F.2d 501 (7th Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990); *United States v. White*, 893 F.2d 276 (10th Cir.1990); *United States v. McCarthy*, 961 F.2d 972, 979 (1st Cir.1992) (specific deterrence and recidivism concerns justify "factoring ... post-plea offenses into guidelines sentencing process"). These holdings support the proposition that relevant conduct is not limited to conduct that precedes determination of guilt.

### E. Application at resentencing of rule that courts must consider all facts and circumstances known at the time of sentencing

#### 1. A resentence is a sentence

■ An order vacating a sentence requires the district judge to resentence as if sentencing de novo. *United States v. Maldonado*, 996 F.2d 598, 599 (2d Cir.1993) ("[W]hen a sentence has been vacated, the defendant is placed in the same position as if he had never been sentenced."); *cf. United States v. Stra-*

*chan,* No. 93–30004, 1994 WL 32637, 1994 U.S.App. LEXIS 2408, at *3 (9th Cir. Feb. 1, 1994) (when sentence vacated and remanded, remand "wiped the slate clean and the district court was required to sentence from scratch on a tabula rasa"). Although *Maldonado* concerned application of Rule 32 of the Federal Rules of Criminal Procedure, there is no "reason why vacating a sentence on any other ground should have a different legal significance." *United States v. Ekhator,* 853 F.Supp. 630, 633 (E.D.N.Y.1994). To hold otherwise would ignore the meaning of "vacate," both in plain usage and as it has been explicated in the caselaw in this circuit. *See, e.g., United States v. Ekwunoh,* No. 91–684, 1994 U.S.Dist. LEXIS 17948, at *7 (E.D.N.Y. Dec. 9, 1994) ("An order vacating a sentence requires the trial court to sentence de novo."). Other circuits are in agreement with the Second Circuit approach. *See, e.g., United States v. Graham,* No. 91–6681, 1993 WL 88090, 1993 U.S.App. LEXIS 6815, at *3 (4th Cir.1993) (vacation of a sentence entails de novo resentencing unless the remanding court gives narrowing instructions). To differentiate between sentencing and resentencing would preclude consistent application of other rules pertaining to sentencing when they arise in the resentencing context. *See, e.g., United States v. Pfeiffer,* 886 F.Supp. 303 (E.D.N.Y.1995) (consistent application of bail provisions of 18 U.S.C. § 3143 requires treatment of a resentence as a sentence); *cf. United States v. Taylor,* 11 F.3d 149, 152 (11th Cir.1994) (holding that Federal Rule of Criminal Procedure 43, mandating presence of defendant at sentencing, applies to resentence); *Paul v. United States,* 734 F.2d 1064, 1066–67 (5th Cir.1984) (same).

## 2. Judge must use all information available up until time of resentence

■ Given that a resentence is a sentence, a judge can and must consider all information available to him or her at the time of resentence. In the 1990's, because of the Guidelines, remands for resentencing are common. *See* United States Sentencing Commission, *Annual Report 1994* 133–48 (1995).

Appellate review of sentencing decisions constitutes a considerable fraction of the appellate court's workload. *See* Federal Judicial Center, *Guideline Sentencing: An Outline of Appellate Case Law on Selected Issues* (April 1995) (describing more than 1,900 reported court of appeals cases interpreting Guidelines in last seven years); Daniel Wise, *After Five Years, No One Loves the Federal Sentencing Guidelines; Prosecutors Complain of More Work; Defenders See Rules Altering Practice,* N.Y.L.J., Nov. 4, 1992, at 1 (describing "significant upsurge" in appeals of sentences in the wake of Guidelines); *see also* Anthony N. Doob, *The United States Sentencing Commission Guidelines: If You Don't Know Where You Are Going, You Might Not Get There, in The Politics of Sentencing Reform* 199, 250 (1995) ("[T]he United States Sentencing Commission has performed an important function. It has demonstrated for better or worse that sentencing practice can be changed rather dramatically in a short period of time."). The number of unpublished opinions in this area is particularly great, so that an estimate of scores of cases remanded annually for resentencing in the Second Circuit is conservative.

In the pre-Guidelines era, appellate review of district court sentencing decisions was exceedingly rare. In 1962, a member of the Second Circuit Court of Appeals observed that:

> At present, there is virtually no appellate review of criminal sentences in federal courts.... Prior to 1891, the old circuit courts had power to correct harsh sentences on appeal.... But the language of the 1891 statute creating the new appellate courts was thought to "repeal" that grant of authority; and since 1891 federal upper courts have generally denied themselves any power to revise sentences.

*Appellate Review of Sentences: A Symposium of the Judicial Conference of the United States Court of Appeals for the Second Circuit,* 32 F.R.D. 249, 259 (1962) (statement of Judge Irving R. Kaufmann) (footnotes omitted). Because cases were almost never remanded for resentencing, the question of

whether the sentencing court could consider facts learned after the initial sentence rarely came up.

By contrast, appellate review of trial verdicts has long been common. Reversal by a court of appeals often leads to resentencing following a re-trial. In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court held in such an instance that a district court could at resentence consider events occurring up until the time of the resentence. The Court explained that a defendant who is reconvicted after a successful appeal

> may receive a shorter sentence, he may receive the same sentence, or he may receive a longer sentence than the one originally imposed. The result may depend upon a particular combination of infinite variables peculiar to each individual [case].

*Id.* at 722, 89 S.Ct. at 2079. The Court held,

> [a] trial judge is not ... precluded ... from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's "life, health, habits, conduct, and mental and moral propensities." ... The freedom of a sentencing judge to consider the defendant's conduct subsequent to the first conviction in imposing a new sentence is no more than consonant with the principle, fully approved in *Williams v. New York*, ... that a State may adopt the "prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime."

*Id.* at 723, 89 S.Ct. at 2079–80 (quoting *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949)) (citations omitted).

The *Pearce* court explicitly held that facts and circumstances that develop after the initial sentencing may be considered by the resentencing judge. As the Court explained in a subsequent case:

> [W]henever a judge imposes a more severe sentence upon a defendant after a new trial, ... the sentencing judge's reasons "must affirmatively appear," and ... those reasons "must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.

*Michigan v. Payne*, 412 U.S. 47, 51, 93 S.Ct. 1966, 1968, 36 L.Ed.2d 736 (1973) (quoting *Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081) (citations omitted).

The Guidelines have not changed this sentencing precept requiring consideration of all relevant facts to the time of a new sentence. Courts have cited *Pearce* as compelling the conclusion that, under the Guidelines, courts may consider post-sentencing conduct on remand. *See, e.g., United States v. Apple*, 962 F.2d 335, 337 (4th Cir.1992); *United States v. Brick*, 905 F.2d 1092, 1096 (7th Cir.1990).

## F. Caselaw imposing temporal limits on fact-finding

Several courts of appeals—but not that of the Second Circuit—have held that sentencing judges may not rely on post-sentencing conduct at resentencing proceedings. For example, in *United States v. Plummer*, No. 91–5135, 1991 WL 211771, 1991 U.S.App. LEXIS 24899 (4th Cir. Oct. 22, 1991) (unpublished, per curiam), the district court failed to consider, at resentencing on remand, the defendant's drug rehabilitation while in prison. The court of appeals affirmed, holding that "[t]he guidelines do not authorize a downward departure based upon [any] post-offense conduct." *Id.* at *6. For this proposition, the court simply cited "U.S.S.G. § 5K." *Id.* In finding no such permission in the Guidelines, the court could properly have found that post-offense conduct was not adequately considered by the Sentencing Commission, and therefore that it *is* a permissible basis for departure. The *Plummer* holding disregards such Guidelines provisions as § 5K1.1 and § 3C1.1, which would be meaningless if post-offense conduct could not be considered as grounds for departure.

Similarly, in *United States v. Warner*, 43 F.3d 1335 (10th Cir.1994), the court held that a district court may not consider post-sen-

tencing conduct at resentencing on remand. It based this holding largely on two decisions from the Fourth and Ninth Circuits: *United States v. Apple*, 962 F.2d 335, 337 (4th Cir. 1992), and *United States v. Gomez–Padilla*, 972 F.2d 284, 285 (9th Cir.1992). Yet the court acknowledged that neither *Apple* nor *Gomez–Padilla* involved fully de novo resentencing on remand. 43 F.3d at 1340. The *Warner* court also relied on the holding of *United States v. Smith*, 930 F.2d 1450, 1456 (10th Cir.), *cert. denied*, 502 U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991), but that case actually supports the opposite view.

In *Smith*, the defendant successfully appealed his robbery sentence. On remand, the district court considered two factors—victim vulnerability and degree of planning—that it had not considered at the first sentence. The defendant argued that these actions exceeded the scope of the remand. The court of appeals rejected this argument, holding:

> This court's remand for resentencing was not, as appellant suggests, a narrowly confined request for an explanation of the court's reasons for imposing his sentence.... Rather, we vacated Mr. Smith's sentence and remanded for resentencing. Such an order directs the sentencing court to begin anew, so that "fully de novo resentencing" is entirely appropriate. The defendant is accorded the same procedural rights on resentencing as on the initial sentencing. Therefore, no prejudice results from the reconsideration of sentencing factors under the guidelines. The law of the case doctrine and the cases cited by Mr. Smith are inapposite, given this court's vacation of his initial sentence.

*Id.* at 1456 (citations omitted). The *Smith* holding is a clear statement of the sentencing court's broad factfinding powers at resentencing. *See also United States v. Ortiz*, 25 F.3d 934, 935 (10th Cir.1994) ("We now hold that de novo resentencing permits the receipt of any relevant evidence the court could have heard at the first sentencing hearing.").

In sum, no controlling—or even persuasive—caselaw suggests that courts in the Second Circuit should abandon their sensible rule of evaluating the defendant's character and other relevant factors as they are best determined from all available evidence at the time he or she is sentenced. It would be a strange doctrine that would force trial judges to ignore relevant information that might affect their evaluation of the truth or falsity of critical issues. *Cf., e.g.*, Rules 401–403 of the Federal Rules of Evidence. To blindfold and put earmuffs on judges at the stage when they must determine how best to protect the public not only increases the probability that their evaluations will be erroneous, but undermines whatever rational basis there may be for Guidelines sentencing.

## G. Departures based on "character of the offender"

■ Under the Guidelines, courts can depart for reasons not considered, or not adequately considered, by the Sentencing Commission in the formulation of the Guidelines. U.S.S.G. § 5K2.0. Although the sentencing commission lists several possible grounds for departure, "[t]his list is not ... exhaustive, and leaves 'the application of other factors to the discretion of the sentencing judge.'" *United States v. Rogers*, 972 F.2d 489, 492 (2d Cir.1992) (quoting *United States v. Lara*, 905 F.2d 599, 602 (2d Cir.1990)).

■ Available grounds for departure can, for purposes of analysis, be divided into those that reflect on the character of the offense, and those that reflect the character of the offender. *See Witte v. United States*, —— U.S. ——, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995); *but see id.* at ——, 115 S.Ct. at 2207 (finding no bright-line distinction between the two categories); *United States v. Tropiano*, No. 93–CR–1362, 1995 WL 390002, 1995 U.S.Dist. LEXIS 9218 (E.D.N.Y. June 30, 1995) (discussing overlap between character of offense and character of offender). Among those grounds for departure based primarily on *offender* characteristics are those involving inordinate effects on "innocent parties"—usually family members—and those involving exceptional effects on the defendant. Despite these analytic distinctions, the commentary to § 5K2.0 was amended on

November 1, 1994 to explicitly allow for "totality of circumstances" departures.

> The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of ... characteristics or circumstances, differs significantly from the 'heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case.

U.S.S.G. § 5K2.0, Commentary (as amended Nov. 1, 1994) (Amendment 508). This amendment would seem to "overrule" *United States v. Minicone,* 26 F.3d 297, 302 (2d Cir.1994) (court may not aggregate factors in determining whether to depart) in favor of the view of other circuits that permitted "totality of the circumstances" departures prior to the amendment. *See, e.g., United States v. Bowser,* 941 F.2d 1019, 1024–25 (10th Cir. 1991); *United States v. Cook,* 938 F.2d 149, 153 (9th Cir.1991). It makes availability of current information at time of sentence even more important so that all factors can be evaluated in context.

## 1. Inordinate effects on others

■ The desire not to inflict undue harm on innocent parties is a universal sentencing consideration. *See* Eleanor Bush, *Considering the Defendant's Children at Sentencing,* 2 Fed.Sent.Rep. 194 (1989). In the Second Circuit, the needs of family members are an established ground for departure. *See United States v. Johnson,* 964 F.2d 124, 129 (2d Cir.1992) ("Extraordinary family circumstances are widely accepted as a valid reason for departure."); *id.* (explaining that purpose of departure is to protect not the defendant, but his or her family members).

Most family circumstances departures involve spouses, parents, or children, but these are not the only relationships cognizable under the "family" circumstances rubric. The relevant factor in such departures is that an innocent party will be harmed by the defendant's incarceration; the nature of the relationship is not decisive. *United States v. Rose,* 885 F.Supp. 62 (E.D.N.Y.1995). The variety of relationships cognizable under the family circumstances departure is as broad as the variety of family forms. *See, e.g., United States v. Naugle,* 879 F.Supp. 262, 264 (E.D.N.Y.1995) (citing *Braschi v. Stahl Associates,* 74 N.Y.2d 201, 544 N.Y.S.2d 784, 543 N.E.2d 49 (1989) (recognizing that gay couple is a family)).

## 2. Inordinate effect on defendant

■ The court of appeals for the Second Circuit has "increasingly recognized the importance of departure by reason of offender characteristics for the fair fulfillment of the sentencing scheme prescribed by the Sentencing Reform Act and the Sentencing Guidelines." *United States v. Restrepo,* 999 F.2d 640, 643 (2d Cir.1993) (quoting *United States v. Merritt,* 988 F.2d 1298, 1309 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2933, 124 L.Ed.2d 683 (1993)). Such characteristics are particularly relevant to the judge's duty to impose the least severe sentence sufficient to accomplish the goals of sentencing enumerated at 18 U.S.C. § 3551 *et seq.* An obvious corollary of this rule is that a judge must be cognizant of—and, whenever possible, correct for—offender characteristics that would make the effective terms of a sentence more severe for a particular defendant than for the "typical" defendant. This rule is the basis for the requirement that fines be calibrated to the defendant's ability to pay. *See, e.g.,* U.S.S.G. § 5E1.2(d)(2). It is less familiar, but no less essential, in the context of incarceration.

In the Second Circuit, courts have approved departures in a variety of situations in which incarceration would have an unusually harsh impact on the defendant. *See, e.g., United States v. Gonzalez,* 945 F.2d 525, 526–27 (2d Cir.1991) (vulnerability to physical abuse); *United States v. Lara,* 905 F.2d 599 (2d Cir.1990) (susceptibility to attack because of youthful appearance); *United States v. Maier,* 777 F.Supp. 293, 294 (S.D.N.Y.1991) (unavailability of methadone treatment, without which defendant might die). *Cf. United States v. Guiro,* 887 F.Supp. 66 (E.D.N.Y. 1995) (separation from family); *United States v. Ekwunoh,* No. 91–CR–684, 1994

U.S.Dist. LEXIS 17948 (E.D.N.Y. Dec. 9, 1994) (psychological effects of convoluted appeals process, which magnify effects of incarceration on defendant); *Soering v. United Kingdom*, 11 E.H.R.R. 439 (July 7, 1989) (LEXIS, Europe library, Cases file) (same, as grounds for declining to extradite German citizen to U.S.). Such cases recognize the reality—which is known to all sentencing judges—that a term of incarceration can have different effects on different defendants and their families. The Guidelines, which are based on the characteristics of average offenders, *see Guidelines Manual* 10 (Nov. 1, 1994), allow the judge to make the necessary corrections under U.S.S.G. § 5K2.0.

### H. Application of grounds for departure at resentencing following successful appeal by the government.

■ The effect of a remand after a successful appeal of a sentence by the government was not adequately considered by the Sentencing Commission. In *United States v. Myers*, 41 F.3d 531 (9th Cir.1994), the Ninth Circuit Court of Appeals observed that "[n]othing in the Guidelines indicates that the Sentencing Commission adequately considered a defendant's *post-offense* conduct as an aggravating circumstance warranting an upward departure." *Id.* at 534 (emphasis in original). Just as the Commission did not consider post-offense conduct, it did not consider a subset of post-offense conduct, post-first-sentencing conduct.

Reincarcerating a defendant who has already been released from prison, or adding to the term of a defendant who is about to be released from prison, after a successful government appeal, may have extraordinary effects on the defendant's family. Normally, in such cases, the family circumstances departure, U.S.S.G. § 5H1.6, will permit the sentencing court to take this circumstance into account. The effects on the defendant alone, however, would be sufficient grounds for departure under § 5K2.0.

### IV. APPLICATION OF LAW TO FACTS

#### A. Generally

The mandate in this case requires the sentencing court to follow the Guidelines. It does not require the court to abandon the goal of sentencing in proportion to culpability. *See United States v. Mickens*, 977 F.2d 69, 73 (2d Cir.1992) (sentencing guidelines are not "intended to alter ... traditional role of a district judge in bringing compassion and common sense to the sentencing process") (quoting *United States v. Rogers*, 972 F.2d 489, 495 (2d Cir.1992)).

### B. Individual cases

#### 1. Ramon Quinones

■ The defendant's father, who is 70, had a stroke after the defendant's initial sentence. He is confined to a wheelchair and requires the defendant's help. Now living in a halfway house, the defendant works full-time and helps with his father's therapy. The defendant runs the family business, which is likely to be lost if he returns to prison.

The defendant's fiancee described his parents' reaction to the news that their son might be returned to prison:

> The mother became very hysterical. She just didn't know what she was going to do. She needs her son home. The father really can't talk right now because his stroke also impaired his speech. But he was crying and he was very upset.

Without a departure, the defendant would have been sentenced to 24 to 30 months. On the basis of the above-described facts, the court departs downward 5 levels to level 12. Any lesser departure would, under the circumstances, be inadequate to address the special conditions of this case. The defendant is sentenced to 11 months in prison—permitting him to be released as planned—plus two years' supervised release, restitution to the City of New York of $5,500, a fine of $5,000, and a $50 special assessment, to be paid during the period of supervised release without interest during that period.

#### 2. Michael Antonucci

■ Antonucci spent six months at Allenwood, and was then moved to a halfway house, from where he has begun working

part-time. The defendant's wife died while he was incarcerated.

The defendant has a son who lives at home and is dependent on him financially and emotionally. The junior Antonucci cared for his mother while the defendant was in prison; now he hopes to return to school, which will be possible only with his father's financial support. That support is impossible while the defendant is incarcerated. The court finds that the son is suffering from severe emotional distress, given the death of his mother and absence of his father, and requires the father's presence. The court departs downward 4 levels to level 13. Any lesser departure would, under the circumstances, be inadequate to address the special conditions of this case. The defendant is sentenced to twelve months in prison—which will permit him to remain in the halfway house, allowing him to work and see his son regularly—plus two years' supervised release, restitution of $15,900, a fine of $5,000, and a $50 special assessment, to be paid during the period of supervised release without interest during that period.

### 3.  Alfred Abbadessa

■ Abbadessa was sentenced to one year in prison. By the time of the resentencing hearing, he had been residing in a halfway house for four months. From that base, he was working full-time in a supermarket and had reestablished ties with his family, including four young children. He testified that during his incarceration, "my wife had to take on two jobs. My children were basically without parents. [The children] suffered emotionally." The defendant indicated that he was in family therapy with the child who had suffered most acutely during his incarceration. The wife and children testified to the emotional problems the children had developed in school during the defendant's incarceration.

The defendant was eight days away from release. His reestablishment of family ties— including the family therapy—would be interrupted if he were returned to prison, throwing the family into upheaval. The court departs downward 5 levels to level 12. Any lesser departure would, under the circumstances, be inadequate to address the special conditions of this case. The court sentences him to time served, followed by two years' supervised release. He is ordered to pay restitution to the City of $18,840, a fine of $5,000, and a special assessment of $50, to be paid during the period of supervised release without interest during that period.

### 4.  Ismael Hernandez

■ Hernandez obtained a General Education Diploma while at Allenwood Penitentiary. He was later released to a halfway house, where he began rebuilding his relationships with his wife and two sons. The defendant's wife, who was in the courtroom weeping during the resentencing, had been working 12 hours a day during his incarceration. The defendant's older son, 15, who is hoping to enter the Air Force, had been admitted to Aviation High School. During the defendant's absence, the son's grades dropped precipitously. The younger son became unruly as a result of being without a father or, for most of the day, a mother. The defendant has been helping both his sons reestablish themselves since his release and he has also taken appropriate steps to land a steady, relatively high-paying job. The court departs downward 8 levels to level 11. Any lesser departure would, under the circumstances, be inadequate to address the special conditions of this case. The defendant is sentenced to time served—nine months in prison—followed by two years' supervised release. He is ordered to pay restitution to the City of New York of $6,000, a fine of $5,000, and a $50 special assessment, to be paid during the period of supervised release without interest during that period.

### 5.  Anthony Barone

■ Barone's wife, a New York City schoolteacher, testified to the extreme stress her husband's incarceration has placed on the family, including a two-year-old daughter whose father has been incarcerated for half

of her life. The court observed that the wife was close to a nervous breakdown. His family, obviously, needs him at home. The court departs downward 4 levels to level 13. Any lesser departure would, under the circumstances, be inadequate to address the special conditions of this case. The court sentences the defendant to twelve months and one day—time served—followed by two years of supervised release. He is ordered to pay restitution in the amount of $3,000, a fine of $7,500, and a $50 special assessment, to be paid during the period of supervised release without interest during that period.

### 6. Nicola DeRiggi

■ DeRiggi was eight months into his period of incarceration at the time of the resentencing. Although the beneficiary of a § 5K1.1 letter, he was a chief organizer of the scheme. The entire enterprise could not have gone forward without his participation. In light of the necessity of tying punishment to culpability, the court departs downward just two levels, to level 19, on the basis of the § 5K1.1 letter, and declines to depart downward on any other ground. It also sentences him near the top of the applicable Guidelines range, 30–37 months. The defendant is resentenced within the Guidelines to 36 months in prison followed by two years' supervised release. He is ordered to pay restitution to the City of New York of $10,000, a fine of $7,500 fine, and a $50 special assessment, to be paid during the period of supervised release without interest during that period.

### C. Summary of grounds for departure

Two independent grounds for departure existed, in some combination, in the cases of Quinones, Antonucci, Abbadessa, Hernandez, and Barone: family circumstances and the effects of re-incarceration or extension of incarceration after a successful appeal by the government. The latter, while an adequate and independent ground for departure, is also relevant to the magnitude of the family circumstances departure. The financial payments are not beyond the probable future financial capacity of any of the defendants.

## V. CONCLUSION

Pursuant to the court of appeals mandate and the Guidelines, the defendants are resentenced as described above.

SO ORDERED.